

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 31, 1961

Honorable J. W. Edgar
Commissioner of Education
Austin, Texas

Opinion No. WW-1127

Re: Whether non-resident scholastics
who were residents of a given
school district when the last pre-
ceding school census was taken
may be included in that district's
average daily attendance; and
whether children of scholastic
age who are placed in a district's
kindergarten program may be in-
cluded in that district's average

Dear Dr. Edgar:

daily attendance.

Your letter of May 30, 1961, presents two inquiries, the first of
which is substantially as follows:

> Whether scholastics who do not reside in the district
> whose schools they attend may be included in average daily
> attendance figures for Foundation School Fund benefits if
> they were residents of that district when the last preceding
> annual school census was taken.

Section 1 of Article 2922-13, Vernon's Civil Statutes, after stat-
ing that the number of professional units to be allotted to each school
district shall be determined by that district's average daily attendance
during the preceding scholastic year, continues, in part, as follows:

> ". . . provided that the attendance of non-resident
> scholastics whose grades are taught in their home districts
> shall not count toward teacher eligibility, unless the trans-
> fer of such scholastics has been approved by the County
> School Board and the State Commissioner of Education.
> . . ."

Under the facts stated in your inquiry, no formal transfer has taken place. Nor is it suggested that the grades to which these scholastics have advanced are not taught in the district in which they reside. Such are the only exceptions recognized by Section 1 of Article 2922-13 in its exclusion of non-resident scholastics from average daily attendance calculation.

The statutes dealing with the annual school census in no way suggest that the census will be determinative of scholastics' residence. Article 2816, et seq., Vernon's Civil Statutes, Therefore, the fact that the scholastics in question were residents of the district when the last preceding census was taken is a matter of no consequence.

In Palmer v. District Trustees of District No. 21, 289 S. W. 2d 344 (Civ. App. 1956, error ref., n. r. e.), in which certain scholastics were attending school in a district adjacent to the one in which they resided, the Court interpreted Section 1 of Article 2922-13 as meaning (p. 346) that:

> ". . . the result of such attendance without a formally approved transfer would be that no financial benefits from state funds under the teacher eligibility provisions of the Gilmer-Aikin Act would accrue to the school district . . ."

It is accordingly our opinion that non-resident scholastics who have not been properly transferred, and whose grades are taught in their home districts, cannot be included in average daily attendance figures used for computing Foundation School Fund benefits, even though they were residents of that district when the last preceding school census was taken.

You have further inquired substantially as follows:

> Whether children of scholastic age who are placed in a district's kindergarten program should properly be included in computing that school district's average daily attendance.

At the outset we wish to make it clearly understood that this department does not purport to pass upon the fact question of whether the subject kindergartens are first grade classes by reason of the curriculum taught in such classes. For purposes of answering your legal question we proceed upon the assumption that the classes to which six year olds have been assigned are in fact kindergarten classes.

Since Section 1 of Article 2922-13, Vernon's Civil Statutes, es-
tablishes the "average daily attendance for the district" as being the cri-
terion upon which professional units are to be allotted to school districts
under the Foundation School Program Act, the precise question before us
is whether "average daily attendance for the district" includes attendance
of children of school age in kindergartens maintained by the districts. It
is our opinion that this question must be answered in the negative.

School districts derive their power by delegation from the State.
Love v. City of Dallas, 120 Tex. 35, 40 S. W. 2d 20 (1931). Article 2919,
Vernon's Civil Statutes, supplies the only authority in our statutes for
the establishment and maintenance of a kindergarten by a school district.
At the time the Gilmer-Aikin law was enacted and at the time the instant
opinion was requested this statute read in part:

> "The trustess of any school district in Texas, upon peti-
> tion of the parents or guardians of twenty-five or more child-
> ren under the scholastic age down to and including five years,
> residing in said district, shall establish public free schools
> of the said district for the training of children within said ages
> residing in said district . . .

> ". . . the cost of establishing and maintaining such a kin-
> dergarten shall be paid from the special school tax of said dis-
> trict. " (Emphasis added).

The above restrictions on the authority of school districts to main-
tain kindergartens have been re-enacted in an amendment of Article 2919,
Vernon's Civil Statutes, by House Bill 56, passed during the First Called
Session of the 57th Legislature and made effective upon signature of the
Governor as recently as August 18, 1961. The relevant portion of the
statute now reads as follows:

> "The governing board of any school district in Texas is
> hereby authorized to establish and maintain as a part of the
> public free schools of said district one or more kindergar-
> tens for the training of children residing in said district who
> are under the scholastic age and who are at least five years
> of age.

> ". . .

"The cost of establishing and maintaining such kinder-gartens shall be paid from the special school tax of said dis-tricts." (Emphasis added).

The foregoing quotations make two things clear: (1) kingergartens are for children under the scholastic age, and (2) kingergartens are to be maintained from funds of local school districts.

The scholastic age in Texas is "over six years of age and under eighteen years of age at the beginning of the scholastic year." Arts. 2901, 2902, V. C. S. Hence, there can be no doubt that the legislative intention in Article 2919, Vernon's Civil Statutes, is to exclude six year olds from kindergartens which are part of the public free schools.

Article 2922-11, Vernon's Civil Statutes, provides in part:

"It is the purpose of this Act to guarantee to each child of school age in Texas the availability of a minimum Founda-tion School Program. . . ."

From this alone it might be argued that regardless of where a child is placed in the public school system, even if it be kindergarten, if the child be six years of age the school district is entitled to credit for his attendance and to the consequent financial benefits accruing from the minimum Foundation School Fund.

However, it is a settled rule of statutory construction, being known as the fule of pari materia, that in interpreting a statute it is to be viewed together with other enactments on the same subject matter and construed so as to be consistent with such enactments where possible. Love v. City of Dallas, supra. The statutes referred to above are in pari materia since they relate to the same class of persons or things. Upon viewing the statutes together it is evident to us that the Legislature has manifested an intent to extend state support to local school districts for the education of children over six years of age in grades 1 through 12 and not in kinder-gartens.

This construction is also supported by the rule of interpretation which holds that in case of a conflict between a general provision and a special provision dealing with the same subject, the former is controlled

or limited by the latter. 39 Tex. Jur. 212, Statutes, Sec. 114. Here we have a statute which deals specially with the authority of school districts to teach children of certain ages in kindergarten and we have another statute which concerns the state aid which is to be afforded school districts in the teaching of children of school age. This latter statute primarily relates to the financial administration and allocation of school funds. To the extent that they deal with the same subject matter, the teaching of children in kindergarten, the former, being the more specific, must prevail over the latter.

Then in contemplation of law, as it now stands, there are no children of scholastic age in kindergartens maintained by school districts because school districts are not empowered to maintain kindergartens for children of scholastic age. For that reason, we cannot ascribe to the Legislature an intention in the Gilmer-Aikin Law, Article 2922, Vernon's Civil Statutes, to allocate state funds to local districts on the basis of the attendance of six-year olds in kindergartens.

Moreover, it is a rule of long standing that in construing statutes an interpretation will not be adopted that will lead to absurd or ridiculous consequences, if the language is susceptible of any other meaning. 39 Tex. Jur. 222, Statutes, Sec. 118. If the school districts are without authority to maintain a kindergarten for children of six years of age, it necessarily follows that the districts are without authority to employ teachers for such purposes. Hence, the minimum Foundation School Program cannot in fact accrue to the benefit of a six-year old in a kindergarten any more than to a child of school age that is not in school at all. Then is it reasonable to count the attendance of such students? Clearly it is not. Since the financial assistance afforded by the Gilmer-Aikin Act cannot produce any direct benefit to kindergartens or to six-year olds in kindergarten, it would be altogether illogical and, indeed, absurd to count the attendance of such children for purposes of the Foundation Program.

In view of the foregoing, it is the opinion of this office that children of scholastic age who are attending a school district's kindergarten are not to be included in average daily attendance figures for that district.

SUMMARY

Scholastics who are not residents of a given school district may not be included in average daily attendance figures for Foundation School Fund benefits, even though they may have

been residents of that district when the last preceding annual school census was taken, unless properly transferred. Children of scholastic age who are placed in a school district's kindergarten program should not be included in the average daily attendance of that district for the purpose of determining Foundation School Fund benefits.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Henry Braswell

Henry Braswell
Assistant

HB:mfh

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman

W. Ray Scruggs
Elmer McVey
John Reeves
Ben Harrison

REVIEWED FOR THE ATTORNEY GENERAL
BY: Howard W. Mays